IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 16-0478 -019-TUC-JGZ (LAB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Jessica Bridget Soto, | ) | |
| Defendant. | ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress evidence. The defendant, Jessica Bridget Soto, argues that all evidence obtained as a result of her traffic stop on 1/5/16 must be suppressed because she was stopped without reasonable suspicion and arrested without probable cause, in violation of her Fourth Amendment rights. (Doc .498).

An evidentiary hearing was held on 7/27/17. AZDPS Officer Brandon Kinser, ATF SA A.J. Gibes, and HSI SA Layne France testified. Government's Exhibits 2, 3 and 4, and Defendant's Exhibits 21 and 22 were admitted into evidence.

**Charges:**

The defendant is charged in Counts 52, 53 and 59 of the indictment with, two counts of attempt to export ammunition from the United States and conspiracy to attempt to export firearms and ammunition from the United States, in violation of 18 U.S.C. § 554(a).

**Motion to Suppress:**

The defendant argues that her Fourth Amendment rights were violated when she was stopped by a DPS trooper without reasonable suspicion on 1/5/16. She also claims that the traffic stop was prolonged beyond the time required to issue the traffic citation, there was no contraband in Ms. Soto's vehicle and no probable cause was established to arrest her. She asserts that any evidence obtained as a result of the illegal stop and seizure must be suppressed.

The government asserts that Ms. Soto was stopped for violation of A.R.S. 28-721.B for driving in the left lane of Interstate 10, below the posted speed limit, for several miles while impeding traffic. Once Ms. Soto was stopped, she was detained only long enough for Trooper Kinser to determine that she was driving on a suspended license and had no proof of insurance. She was cited for those violations and given a warning for driving in the passing lane. When a driver has a suspended license, Arizona law requires that the vehicle be impounded for 30 days. The vehicle must be towed and inventoried.

During the traffic stop, Trooper Kinser saw a large amount of ammunition in the back seat of Ms. Soto's Navigator. He asked Ms. Soto to step out of the car and follow him to his service vehicle so he could access his mobile computer, which he does in all traffic stops. She had no driver's license. As he ran her name and vehicle plates he asked her questions about the ammunition. Her answers raised suspicion that criminal activity was afoot. That contributed to Trooper Kinser's decision to arrest Ms. Soto for driving on a suspended license, rather than allow her to call someone to come pick her up.

The Court concludes the initial seizure was based on reasonable suspicion that the

defendant violated a traffic law, and that she was subsequently arrested based on probable cause that she was driving on a suspended license.1   The evidence is therefore admissible at trial.

**EVIDENCE:**

*Brandon Kinser* testified that he has been a Department of Public Safety Officer for 4 ½ years.  He worked as an Arizona Highway Patrol Officer for 3 ½ years out of Casa Grande, AZ, enforcing traffic laws, and is now on the border operation squad as a state trooper.  He has over 40 hours of formal training, plus on the job training, addressing enforcement of traffic laws.  He is familiar with the Arizona traffic code.  His duties include criminal interdiction.   Trooper Kinser looks past the traffic laws to detect crime. He has received 32 hours, plus other training, in criminal interdiction and detecting dishonesty.   He is a firearms instructor.

In the present case, there was a BOLO (Be On the Look Out).   BOLOs are common in the area Trooper Kinser patrols because it is a common route for smuggling activities.   He considers a BOLO to be intelligence, but it does not give him reasonable suspicion to stop a vehicle.  He pays more attention to vehicles listed in BOLOs but if there is no traffic violation he lets them go, although he may report the sighting to the requesting agency. Sometimes he stops a vehicle identified in a BOLO where there is a traffic violation but no criminal activity.   He lets it go.

On 1/5/16 Trooper Kinser was on routine patrol duty, sitting on the median of the highway, looking for traffic violations.   At about 3:00 to 4:00 p.m. he received information that a blue Lincoln Navigator was travelling from Phoenix, eastbound on I-10, with a large amount of ammunition.   The BOLO did not alter the course of his duties.   At

---

1 There was a good deal of argument and testimony regarding the BOLO that was based on information from a SOI (source of information). The defendant argued the SOI must be identified so his/her credibility could be determined. All testimony was that although the BOLO was in the back of Trooper Kinser's mind, he did not rely on it for the traffic stop, the line of questioning or the arrest.   The Court ruled that the SOI and his/her credibility were not relevant to the motion and the government was not required to disclose the identity or criminal history of the SOI.

about 4:15 p.m. Trooper Kinser saw the vehicle driving in the left lane, slower than and impeding other traffic. There were no cars in the right lane. He estimated the Navigator to be travelling about 70 miles per hour. His radar confirmed a speed of 71 miles per hour. He pulled in behind the Navigator and paced it at approximately 72 miles per hour for about 6 miles. The Navigator exited the highway, drove along the frontage road and re-entered the highway at the next on ramp. That was odd and may have been an indication of counter surveillance. Almost immediately after the Navigator re-entered the highway, Trooper Kinser initiated the stop. During the time Trooper Kinser was following the vehicle there was sporadic light rain, which left the roadway wet.

Trooper Kinser explained that driving in the left lane slower than the flow of traffic causes drivers to pass on the right, which is more dangerous than passing on the left due to blind spots. Trooper Kinser has previously stopped drivers for the same conduct and given them warnings. He does that to educate motorists. It is not the speed that violates the law but the improper use of the lane.

Ms. Soto pulled over and rolled down the window. Trooper Kinser approached the passenger side of the Navigator. He asked Ms. Soto for her documents, but she could only produce a title, no driver's license or registration. Ms. Soto said she just bought the car for $1,000.00. She stated that she knew she should have been driving in the right hand lane, but she was not paying attention. She said she exited the interstate to find a restroom, which the trooper thought was odd because there were mainly large pecan fields in the area and an old church. Prior exits had truck stops. Trooper Kinser did not rely on the BOLO for the stop, but it was in the back of his mind, and he wanted to talk to the driver about the information.

Trooper Kinser recognized the calibers of the ammunition in the back seat of the Navigator during his initial conversation with Ms. Soto. Most of the backseat was stacked high with ammunition suitable for use in semiautomatic assault rifles. In Trooper

Kinser's experience, drugs and people are smuggled north. Money, firearms and ammunition are smuggled south. Even without the BOLO, Trooper Kinser would have stopped the Navigator for the traffic violation and been concerned about the large amount of ammunition heading south. He did not determine whether Ms. Soto was a prohibited possessor. It is not unlawful to possess a large amount of ammunition.

Ms. Soto was asked to exit the vehicle and follow the trooper to his vehicle so he could fill out the paperwork. He does that in all traffic stops, especially if the person has no driver's license, because it gives him access to his computer. Ms. Soto was not handcuffed. She was not under arrest. Neither was she free to leave. She was cooperative. While Trooper Kinser was running the check on his computer and filling out the paperwork, he was asking Ms. Soto questions about the ammunition. Those tasks took about 15 minutes. During that time, Ms. Soto made statements that raised suspicion and indicated she was not familiar with the calibers of ammunition she possessed. She did not know that they were used primarily for rifles, not pistols. The amount of ammunition was bulk and clearly not for personal use. Trooper Kinser has never seen this quantity of ammunition during a traffic stop. He was concerned about the amount of ammunition and the direction of travel, even without Ms. Soto's statements.

Trooper Kinser arrested Ms. Soto for driving on a suspended license and no proof of insurance. He did not search Ms. Soto or her purse. He transported her to the DPS office where she was questioned by ATF and HSI agents. Trooper Kinser contacted them about the ammunition, which he would have done with or without the BOLO. Later Trooper Kinser transported Ms. Soto to the Pinal County Jail. If not for his concern about the ammunition, he would have transported her directly to the jail from the traffic stop. The Navigator was towed to the office for investigation and then to the impound lot. If not for the ammunition, the vehicle would have been towed directly to the impound lot. Either way it would have been inventoried. It is in the officer's discretion whether to arrest

someone for driving on a suspended license or cite and release them. Trooper Kinser may have released her if not for his suspicions about the ammunition.

*Albert Gibes* testified that he has been a special agent (SA) for the Bureau of Alcohol, Tobacco, Firearms and Explosives for 9 years, assigned to Tucson. He is the case agent in the present case. He and HSI SA Jason Red were working on a separate case when they received a call regarding a large purchase of ammunition in Phoenix. They issued the BOLO, asking other agencies to look for the identified vehicle. The BOLO is not a request to stop the vehicle without an independent traffic violation, but they hope to at least have the vehicle's location reported to them. They thought the ammunition might be headed to Mexico.

Special Agent Gibes was advised that the Navigator was stopped and had 26,000 rounds of ammunition, weighing over 900 pounds. He has never seen this amount of ammunition possessed by one person in a single event. Even without the BOLO he would investigate due to the amount of ammunition, the location and the direction of travel.

Ms. Soto was questioned at the Casa Grande DPS office after waiving her Miranda rights verbally and in writing. The interview was recorded. Ms. Soto had a receipt for the purchase of the ammunition showing she paid about $7,000.00 for it. Prior to the interview, Ms. Soto had been identified with two of the co-defendants in this case. The agents knew of her before the BOLO was issued.

Local law enforcement agencies have no jurisdiction to arrest people in this type of case, however, they frequently report ammunition in vehicles heading south, even for smaller quantities than Ms. Soto possessed.

*Layne France* testified that he has been a SA with Homeland Security Investigations for 9 years. He works out of Phoenix on a border enforcement task force investigating weapons and ammunition smuggling. He called Agent Red on 1/5/16 at about 3:10 pm to request the BOLO. He doesn't know what the BOLO ultimately said. His only

participation in the investigation was to respond to the Casa Grande station and inventory the vehicle. He removed the ammunition from the Navigator and loaded it into another vehicle.

**DISCUSSION**:

The defendant questioned the stop of the vehicle, arguing that the Fourth Amendment does not allow an investigatory detention for a misdemeanor that poses no threat to public safety even if there is reasonable suspicion to believe an offense was committed, citing *United States v. Grigg*, 498 F.3d 1070, 1080 (9th Cir. 2007). In *Grigg* the Court addressed a warrantless arrest for a past completed misdemeanor, not an offense committed in the officer's presence, as in the instant case. The Court held that public safety should be considered within the totality of the circumstances when assessing the reasonableness of an investigatory stop to identify a suspect for a prior misdemeanor, playing one's car stereo at a volume potentially in violation of a local noise ordinance. *Griggs* is distinguishable and not applicable to Ms. Soto's motion to suppress.

The focus of the defense argument was the minor nature of the infraction, the length of detention, the questioning about the ammunition which was unrelated to the traffic stop, the arrest of Ms. Soto for driving on a suspended license rather than citing and releasing her, and the procedure of detaining her at the Casa Grande DPS station for questioning rather than transporting her directly to the jail.

The government responded that a confidential source provided information that led to the BOLO but the stop of Ms. Soto's vehicle was based on her traffic violation, supporting reasonable suspicion to stop her vehicle. During the course of the stop, Trooper Kinser became suspicious that Ms. Soto was engaged in criminal activity. He arrested her for driving on a suspended license, cited her for no proof of insurance and gave her a warning for driving in the passing lane. The vehicle was subject to a mandatory impound which resulted in an inventory search and the seizure of 26,000 rounds of ammunition.

The government argued that even if the traffic stop was prolonged beyond the time necessary to complete the traffic citation it would be reasonable based on the information from the confidential source, the trooper's observation of a large amount of ammunition and the defendant's suspicious statements. The evidence proved that the stop was not prolonged. The argument is inapposite.

### The Stop

Ms. Soto violated A.R.S. 28.721.B, improper use of the left hand lane. She acknowledged that she did so at the time of the stop. There was reasonable suspicion to stop the Navigator. Even if Trooper Kinser stopped the vehicle because he wanted to investigate the BOLO, Ms. Soto's traffic violation made the stop reasonable. *See Whren v. U.S.*, 517 U.S. 806, 810, 812-13 (1996)

Trooper Kinser testified that it took him about 15 minutes to run Ms. Soto's name and vehicle information on his computer and complete the paperwork for the citation and the warning. That is typical for him. He stated that while he was completing his tasks for the traffic stop he questioned her regarding the ammunition. There is no evidence that the traffic stop was prolonged beyond the time necessary to complete the required duties. As the defendant stated in her motion, "An officer can question a suspect about issues unrelated to the purpose of the stop, but cannot unduly prolong the detention." *Muehler v. Mena*, 544 U.S. 93 2005). The length of the stop and the unrelated questions are permissible.

### The Arrest

It is within the officer's discretion to cite and release someone for driving on a suspended license or arrest her, according to Trooper Kinser. In this case there was probable cause to arrest Ms. Soto for driving on a suspended license. Trooper Kinser also considered that Ms. Soto was in possession of the largest quantity of ammunition he had ever seen during a traffic stop. The defendant lacked knowledge of the type and intended

use of the ammunition, indicating it was not for her personal use. Ms. Soto was driving south, in a corridor where money, guns and ammunition are known to head south to be smuggled into Mexico. The defendant argued that she was unlawfully arrested for possession of the ammunition without probable cause to believe that a crime was being committed. Trooper Kinser testified that he arrested her for driving on a suspended license. The arrest is lawful.

Once Ms. Soto was arrested and in custody she was questioned by agents about the ammunition. The defense did not cite any authority for the proposition that a defendant cannot be questioned about an unrelated crime. She was advised of, and waived her *Miranda* rights verbally and in writing. The motion to suppress did not raise any voluntariness issues.

The Search

Ms. Soto challenged the search of her vehicle, mistakenly arguing that she was not charged with a crime. Although Ms. Soto was not charged at the time for an offense related to the ammunition, she was charged for the criminal offense of driving on a suspended license. Arizona law mandates that the vehicle be impounded for 30 days when a driver is cited or arrested for driving on a suspended license. A.R.S. § 28-3511(A)(1)(a). The ammunition was seized pursuant to a lawful inventory search. *See South Dakota v. Opperman*, 428 U.S. 364, 369-72 (1976); *U.S. v. Ruckles*, 586 F.3d 713, 719 (9th Cir. 2009).

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **DENY** the motion to suppress evidence. (Doc.498)

Defense counsel may serve and file written objections within 14 days. If objections are not timely filed, the party's right to de novo review may be waived. No reply to objections

shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 11th day of August, 2017.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge